UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EBONE LEROY EAST, ) | NO. ED CV 09-142-GW(E) |
| Plaintiff, ) | |
| v. ) | MEMORANDUM AND ORDER |
| K. LEWIS, et al., ) | |
| Defendants. ) | |

For the reasons discussed below, the First Amended Complaint is dismissed with leave to amend. See 28 U.S.C. §§ 1915A; 1915(e)(2)(B); 42 U.S.C. § 1997e(c).

**BACKGROUND**

Plaintiff is a state detainee at the West Valley Detention Center in San Bernardino, California (the "WVDC"). Plaintiff was convicted on April 14, 2009, of violating California criminal law. Plaintiff filed a pro se civil rights action on January 26, 2009, against San Bernardino Sheriff Deputies K. Lewis, Mondragon, and Grizzle, and against WVDC Psychotherapist Christina Wooder.

The Complaint asserted three claims for relief. In Claims 1 and 2, Plaintiff alleged that Defendant Wooder voluntarily disclosed assertedly privileged information that Plaintiff had provided to Defendant Wooder concerning Plaintiff's mental condition. Plaintiff alleged that this information was used to reclassify him as "assaultive," and to move him to a housing unit where he is locked down 23.5 hours per day and fed sometimes only twice per day. Plaintiff further alleged he has been denied medication that he has requested to treat his alleged mental illness. Plaintiff alleged that these actions subjected Plaintiff to cruel and unusual punishment based on his mental disability, in asserted violation of his Eighth Amendment rights (Complaint, pp. 3-4).

In Claim 3, Plaintiff alleged that Defendants Lewis, Mondragon and Grizzle used excessive force by slamming Plaintiff on his bunk, twisting Plaintiff's left arm causing injury, choking Plaintiff, and twisting Plaintiff's leg. Plaintiff alleged that the deputies then dragged him out of his cell and threw him on the floor. Plaintiff claimed he received a busted lip and minor bruising to his left arm and face. Plaintiff also claimed he required an x-ray of his injured arm, but that no x-ray was performed (Complaint, p. 5).

On April 27, 2009, the Court issued a Memorandum and Order dismissing the Complaint with leave to amend. On May 12, 2009, Plaintiff filed a First Amended Complaint.

///
///
///

**SUMMARY OF ALLEGATIONS OF FIRST AMENDED COMPLAINT**

The First Amended Complaint names as Defendants San Bernardino Sheriff Deputies K. Lewis and Mondragon, and WVDC Psychotherapist Christina "Woodwer," each in their individual and official capacities (Complaint, p. 2). Like the original Complaint, the First Amended Complaint asserts three claims for relief.

In Claims 1 and 2, Plaintiff alleges that he was deprived of his federally-protected rights (i.e., Plaintiff's right to due process, free speech, and freedom from cruel and unusual punishment) by Defendant Woodwer voluntarily disclosing assertedly privileged information that Plaintiff had provided to Defendant Woodwer concerning Plaintiff's mental condition. Plaintiff alleged that this information was used to reclassify him as "assaultive," and to move him to a maximum security housing unit which purportedly has subjected Plaintiff to cruel and unusual punishment.[1] Plaintiff further alleges he was assaulted by unnamed jail staff due to his reclassification status. Finally, Plaintiff alleges he was denied access to the courts by the San Bernardino County Superior Court's denial of a petition for writ of habeas corpus. See First Amended Complaint, p. 3 and attachment thereto (San Bernardino County Superior Court Order).

///

---

[1] Plaintiff alleges that, based on his housing classification, he has been denied a change of clothing for up to three weeks, has been denied the right to clean his cell with cleaning supplies, and is confined in that cell for 23.5 hours per day, which Plaintiff asserts causes staff [sic] infections. See First Amended Complaint, p. 6.

3

In Claim 3, Plaintiff alleges that he was deprived of his federally-protected rights (i.e., Plaintiff's right to due process, free speech, freedom of religion, and freedom from cruel and unusual punishment) by: (1) having been denied access to medical care for three months;[2] (2) having been denied the right to attend church services and to participate in correctional facility programs due to his inmate classification; (3) being housed in a "no razor" unit; and (4) being choked by jail staff. Plaintiff has identified no defendants in Claim 3. See First Amended Complaint, p. 4.

The request for relief seeks an injunction preventing the Defendants from working in the same unit where Plaintiff is housed. Plaintiff does not explain how the requested injunctive relief relates to the claims alleged. Plaintiff also seeks $1.2 million in compensatory damages and $1.2 million in punitive damages. Plaintiff also asks for a written apology. See First Amended Complaint, p. 6.

## DISCUSSION

As the Court previously explained, since Plaintiff is a prisoner proceeding on a civil rights complaint naming governmental defendants and addressing conditions in a correctional facility, the Court must screen the Complaint and dismiss any claims that fail to state a claim upon which relief may be granted. See 28 U.S.C. § 1915A ("prisoner" complaints against government defendants by detained persons accused

---

[2] Plaintiff has attached to the First Amended Complaint two "Health Service Request" forms dated in April, 2009, requesting medical services for which Plaintiff asserts there has been no institutional response.

4

of crimes); 42 U.S.C. § 1997e(c) (complaints regarding "prison" conditions by a prisoner confined in any jail, prison, or other correctional facility); see also Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998), cert. denied, 525 U.S. 1154 (1999) ("The statutory authority is clear: 'the court shall dismiss the case at any time if the court determines that. . . the action or appeal. . . fails to state a claim on which relief may be granted.'") (emphasis in original, citing 28 U.S.C. § 1915(e)(2)(B)(ii)).

When a plaintiff appears pro se, the court construes the pleadings liberally to afford the plaintiff the benefit of any doubt. Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988); see also Jackson v. Carey, 353 F.3d 750, 756 (9th Cir. 2003) (applying same). Giving Plaintiff the benefit of any doubt, the First Amended Complaint in this action appears deficient for the following reasons.

**I.  The First Amended Complaint Fails to Identify Which Defendant is Being Sued on Which Claim and Fails to Allege Facts to Support Official Capacity Claims.**

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain, inter alia: (1) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (2) "a demand for the relief sought, which may include relief in the alternative or different types of relief."  "Each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  "Experience teaches that, unless cases are pled clearly and precisely, issues are

5

not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." Bautista v. Los Angeles County, 216 F.3d 837, 841 (9th Cir. 2000) (citations and quotations omitted).

The claims in the First Amended Complaint consist of lengthy narratives rather than a "short and plain statement" of Plaintiff's claims. The narrative for Claims 1 and 2 references only Defendant Woodwer as a Defendant. To the extent Plaintiff may wish to identify additional Defendants with respect to those claims, Plaintiff should name those Defendants. The narrative for Claim 3, which references unnamed "staff," does not clearly identify the staff or indicate whether those persons are Defendants. A complaint is subject to dismissal if "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery." McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996). Accordingly, the First Amended Complaint should be dismissed for failure to comply with Rule 8(a).

Additionally, to the extent Plaintiff seeks to assert official capacity claims against the individual Defendants, as the Court previously advised, those claims must be construed as claims against the entity by whom Defendants are employed, i.e., San Bernardino County. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). A local government entity, such as San Bernardino County, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is only when execution of a government's policy

1  or custom, whether made by its lawmakers or by those whose edicts or
2  acts may fairly be said to represent official policy, inflicts the
3  injury that the government as an entity is responsible under § 1983."
4  Monell v. Dept. of Social Services City of New York, 436 U.S. 658, 694
5  (1978).  Thus, the County may not be held liable for the alleged
6  actions of individuals operating under the auspices of the County at
7  the WVDC unless "the action that is alleged to be unconstitutional
8  implements or executes a policy statement, ordinance, regulation, or
9  decision officially adopted or promulgated by that body's officers,"
10 or if the alleged constitutional deprivation was "visited pursuant to
11 a governmental 'custom' even though such a custom has not received
12 formal approval through the body's official decisionmaking channels."
13 Monell, 436 U.S. at 690-91; see also Gibson v. County of Washoe, Nev.,
14 290 F.3d 1175, 1185 (9th Cir. 2002), cert. denied, 537 U.S. 1106
15 (2003) (describing "two routes" to municipal liability, where
16 municipality's official policy, regulation or decision violated
17 plaintiff's rights, or alternatively where municipality failed to act
18 under circumstances showing its deliberate indifference to plaintiff's
19 rights) (citations omitted).  The pleading requirements for a
20 municipal liability claim are not particularly onerous.  See Galbraith
21 v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002)
22 (plaintiff must allege that a defendant's conduct conformed to
23 official policy, custom or practice); see also Ashcroft v. Iqbal, 2009
24 WL 1361536 at *15 (U.S. May 18, 2009) (to satisfy Rule 8, complaint
25 seeking relief for allegedly unconstitutional policy must plead facts
26 "plausibly showing" the adoption of such a policy).  However, once
27 again, Plaintiff has not pled the County's liability under these
28

standards.[3]

## II. Plaintiff Has Not Alleged Facts to Establish an Eighth Amendment Claim Concerning His Inmate Classification and Housing; Any Claim Plaintiff May Assert Relating to His Pretrial Detention is a Fourteenth Amendment Due Process Claim.

To the extent Plaintiff may be asserting in Claims 1 and 2 a claim that WVDC officials placed Plaintiff in a special housing unit and classified Plaintiff as "assaultive" based on the information that Defendant Woodwer allegedly shared, Plaintiff has not alleged an Eighth Amendment cruel and unusual punishment claim. Although Plaintiff alleges he was convicted on April 14, 2009, Plaintiff does not indicate whether he has been sentenced or when the alleged classification and housing decisions were made. If the decisions were made (and the consequences suffered) while Plaintiff was a pretrial detainee, Plaintiff would not have an Eighth Amendment Claim.

The Eighth Amendment's prohibition against cruel and unusual punishment applies only after conviction and sentence. Pierce v. Multnomah County, Oregon, 76 F.3d 1032, 1042 (9th Cir.), cert. denied, 519 U.S. 1006 (1996). The Eighth Amendment prohibition does not apply

---

[3] Even if Plaintiff had pled sufficiently the County's liability under Monell, the Court observes that Plaintiff may not recover punitive damages against a governmental entity. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Bell v. Clackamas County, 341 F.3d 858, 868 n.4 (9th Cir. 2003); Ruvalcaba v. City of Los Angeles, 167 F.3d 514, 524 (9th Cir.), cert. denied, 528 U.S. 1003 (1999). The Court further observes that the law will not compel parties to apologize to one another. See McKee v. Turner, 491 F.2d 1106, 1107 (9th Cir. 1974).

8

to pretrial detainees. The same standards generally apply to pretrial detainees under the Due Process Clause, however. Lolli v. County of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003); Gibson v. County of Washoe, Nev., 290 F.3d at 1187; Johnson v. Meltzer, 134 F.3d 1393, 1398 (9th Cir.), cert. denied, 525 U.S. 840 (1998). To the extent Plaintiff may allege that he is being subjected to cruel and unusual punishment for a period before Plaintiff's conviction and sentence, Plaintiff must assert the claim as a due process claim.

To the extent Plaintiff may assert a due process claim concerning his housing within the WVDC, Plaintiff may not have a protected interest to remain in a particular housing unit. "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citation omitted). However, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293, 132 L.Ed.2d 418 (1995)." Wilkinson v. Austin, 545 U.S. at 222; see Sandin v. Conner, 515 U.S. 472 (1995) ("Sandin").

Under Sandin, state prison regulations generally will create a federally enforceable liberty interest only where their application to an inmate "inevitably" affects the duration of the inmate's sentence or imposes an "atypical and significant hardship upon the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484, 487. The Sandin analysis applies to conditions of confinement for pretrial detainees which are not imposed as punishment. See

1 Mitchell v. Dupnik, 75 F.3d 517, 523 (9th Cir. 1996).

3    Here, Plaintiff has not alleged that his classification and housing affect the duration of Plaintiff's confinement in the WVDC. Assuming, arguendo, Sandin applies, Plaintiff has failed to plead that the challenged acts caused Plaintiff to suffer any "atypical and significant hardship" so as to give rise to a liberty interest protected by the Due Process Clause. Sandin, 515 U.S. at 484, 487; see also Resnick v. Hayes, 213 F.3d 443, 448-49 (9th Cir. 2000) (under Sandin, plaintiff failed to state due process claim for confinement in special housing unit pending prison disciplinary hearing, where complaint failed to allege that conditions in special housing unit were materially different from conditions in disciplinary segregation or general population).

### III. **Plaintiff Has Not Alleged Facts Sufficient to Establish a Claim that Jail Officials Were Deliberately Indifferent to Plaintiff's Medical Needs.**

   With respect to Plaintiff's claim that unnamed jail officials deprived Plaintiff of needed medical care, the Court notes that jail officials may violate the Constitution if they are "deliberately indifferent" to an inmate's "serious medical needs." See Gibson v. County of Washoe, Nev., 290 F.3d at 1187 (applying Eighth Amendment "deliberate indifference" standard to pretrial detainee's due process claim); see also Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994) (detailing Eighth Amendment's subjective "deliberate indifference" standard). To be liable for "deliberate indifference" for denying an

1  inmate medical care, a jail official must "know[] of and disregard[]
2  an excessive risk to inmate health and safety." <u>Id.</u> at 837.  The
3  official must "both be aware of facts from which the inference could
4  be drawn that a substantial risk of serious harm [to the inmate]
5  exists, and he [or she] must also draw the inference." <u>Id.</u>  To the
6  extent Plaintiff may wish to pursue a deliberate indifference claim,
7  Plaintiff should identify those Defendants who knew of facts from
8  which an inference could be drawn that a substantial risk of harm to
9  Plaintiff existed.

**IV.   Plaintiff Has Not Alleged Facts Sufficient to Establish a Claim that He Was Denied Access to the Courts.**

Finally, the First Amended Complaint fails to allege an unconstitutional denial of access to the courts.  A prisoner claiming a violation of his right of access to the courts must demonstrate that he has standing to bring the claim by showing the defendant's actions caused the prisoner to suffer "actual injury" in pursuit of either a direct or collateral attack upon a conviction or sentence or a challenge to the conditions of confinement. <u>Lewis v. Casey</u>, 518 U.S. 343, 349 (1996); <u>see also</u> <u>Phillips v. Hust</u>, 477 F.3d 1070, 1075-76 (9th Cir. 2007) (discussing standard for presenting denial of access claim), <u>vacated on other grounds by</u> <u>Hust v. Phillips</u>, 129 S. Ct. 1036 (2009) (citing <u>Pearson v. Callahan</u>, 129 S. Ct. 808 (2009)).  Under <u>Lewis v. Casey</u>, a prisoner must show that an action was "lost or rejected," or that presentation of a non-frivolous claim was or is being prevented, as a result of the alleged denial of access. <u>Id.</u> at 356.  Plaintiff's allegation that the San Bernardino County Superior

1 Court denied a habeas petition does not plead he suffered any "actual
2 injury" within the meaning of Lewis v. Casey.  Plaintiff had access to
3 that court; the court simply ruled against Plaintiff.  As the Superior
4 Court noted, the proper vehicle for challenging the conditions of
5 confinement is a civil rights action, not a petition for writ of
6 habeas corpus.  See Crawford v. Bell, 599 F.2d 891, 891 (9th Cir.
7 1979) ("According to traditional interpretation, the writ of habeas
8 corpus is limited to attacks upon the legality or duration of
9 confinement."); Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991) ("A
10 civil rights action, in contrast [to a habeas petition], is the proper
11 method of challenging 'conditions of. . . confinement.'") (citation
12 omitted).

**ORDER**

The First Amended Complaint is dismissed with leave to amend.  If Plaintiff still wishes to pursue this action, he is granted thirty (30) days from the date of this Order within which to file a Second Amended Complaint.  The Second Amended Complaint shall be complete in itself.  It shall not refer in any manner to any prior complaints.  Plaintiff shall not attempt to add additional parties without leave of Court.  See Fed. R. Civ. P. 21.  Failure to file timely a Second Amended Complaint in conformity with this Memorandum and Order may result in the dismissal of this action.  See Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir.) (affirming dismissal without leave to amend where plaintiff failed to correct deficiencies in complaint, where court had afforded plaintiff opportunities to do so, and where court had given plaintiff notice of the substantive

1 problems with his claims), amended, 234 F.3d 428 (9th Cir. 2000),
2 cert. denied, 531 U.S. 1104 (2001), overruled on other grounds, Odom
3 v. Microsoft Corp., 486 F.3d 541 (9th Cir.), cert. denied, 128 S. Ct.
4 464 (2007); Plumeau v. School District #40 County of Yamhill, 130 F.3d
5 432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where
6 further amendment would be futile).

     IT IS SO ORDERED.

          DATED: January 22, 2010.


                              _____
                                        GEORGE H. WU
                              UNITED STATES DISTRICT JUDGE



Presented this 28th day of
May, 2009, by


 _____/S/_____
         CHARLES F. EICK
 UNITED STATES MAGISTRATE JUDGE